William Henning **RUBIN**, Morton H. Bernstein, John E. Kelly, Sr., and Lillian M. Kelly, his wife; John E. Kelly, Jr. and Charles Turner, Plaintiffs-Appellants,

v.

**CHICAGO SOUTH SHORE & SOUTH BEND RAILROAD**, an Indiana Corporation; Jay Samuel Hart, President; Edward H. Bross, Secretary; W. A. Kissel and William A. Quail, doing business as the Kissel Organization, a partnership of New York City, New York, Defendants-Appellees.

No. 11230.

United States Court of Appeals Seventh Circuit.

Nov. 24, 1954.

As Amended Nov. 30, 1954.

William Henning Rubin, Chicago, Ill., Lawrence Lenit, Chicago, Ill., for appellants.

Walter J. Cummings, Jr., Chicago, Ill., Kenneth F. Burgess, Douglas F. Smith, Donald W. Ingle, Chicago, Ill., Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, FINNEGAN and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

A complaint was filed in the District Court by plaintiffs, who are Illinois stockholders of the defendant Indiana corporation, against the corporation[1] and its president and secretary, as well as the members of a proxy soliciting partnership known as Kissel Organization. The complaint prays for a temporary injunction restraining the corporation from proceeding with its annual meeting to be held on March 25, 1954, until the further order of the court, that the court decree that a by-law of the corporation requiring a majority of the directors to be residents of the state of Indiana is illegal and void, that a permanent mandatory injunction issue causing the directors to remove said by-law from the minute-books, that the officers and directors of the corporation be permanently restrained from using certain proxies secured for said meeting until said by-law has been rescinded by the board of directors and from paying for the solicitation of said proxies, that the court appoint a master in chancery to conduct the meeting, and for general relief.

On March 23, 1954, on motion of plaintiffs, the court authorized the contemplated meeting to be called and organized, and directed that it be continued to March 29, 1954.

Thereafter South Shore filed a motion to dismiss the complaint, which motion was sustained. This appeal followed.

The principal question in this case is raised by plaintiffs' contention that the following by-law adopted by the directors of the corporation is invalid: "A majority of the directors shall be residents of the state of Indiana."

The motion to dismiss admits, *inter alia*, the facts set forth in the complaint as now stated.

Plaintiffs are owners of shares of the common stock of South Shore which maintains an office in Chicago, Illinois. Although it was originally incorporated in 1925 under an Indiana statute entitled "An Act for the incorporation of street railroad companies,"[2] it later became subject to the general corporation act of Indiana by filing articles of reorganization on September 18, 1929, providing "This Corporation hereby accepts all of the terms and conditions of the Indiana 'General Corporation Act,' of 1929."

South Shore is a common carrier engaged in transportation of freight and passengers in interstate commerce between the cities of South Bend, Indiana, and Chicago, Illinois, and operates a bus line through a subsidiary from Michigan

---

1. Hereinafter sometimes referred to as "South Shore."

2. Approved June 4, 1861. Sec. 13297 et seq. Burns' Indiana Statutes, 1926 Ed.

City, Indiana, to Benton Harbor, Michigan. In excess of 50 per cent of its revenue is derived from freight moving in interstate commerce. It is a party to a large number of tariffs publishing joint rates to and from points throughout the country and has arrangements with all other railroads for the division of inter-line freight revenues. It has traffic solicitation offices in various states. It operates an electric railroad between Chicago and South Bend, which is approximately 90 miles in length and parallels and competes with lines of the New York Central System.

Following South Shore's filing a petition under Section 77 of the Bankruptcy Act [3], in the United States District Court on September 30, 1933, a plan of reorganization was approved, which plan "could not be consummated until authority was granted" by the Interstate Commerce Commission.

In 1935, in a proceeding before the Interstate Commerce Commission there was a finding and decision that South Shore was not a street, interurban, or suburban electric railway within the meaning of the exemption proviso of the first paragraph in § 1 of the Railway Labor Act, as amended June 21, 1934.[4]

In a proceeding instituted by South Shore before the Interstate Commerce Commission on June 2, 1938, the commission decided that on and after said date the defendant corporation was not within the terms of similar exemptions in section 1(a) of the Railroad Retirement Act of 1937 [5] or section 1(a) of the Carriers Taxing Act of 1937 [6].

In 1939 South Shore filed a suit in the District Court of United States for the Northern District of Indiana to enjoin James R. Fleming, United States district attorney, from instituting a pro-ceeding against it for violation of the Railway Labor Act [7], wherein the Interstate Commerce Commission intervened. Thereupon the court determined that South Shore was not within the scope of the Railway Labor Act. Upon appeal to this court [8] that determination was reversed.

In 1944 South Shore requested permission of the Interstate Commerce Commission to issue shares of capital stock, and the commission rendered a report finding that South Shore was a common carrier and approved the issue. The application recited that South Shore is a corporation duly organized and existing under the laws of the state of Indiana, having been incorporated June 23, 1925, and having accepted the provisions of the Indiana general corporation act by executing articles of reorganization dated September 16, 1929, which were filed with and approved by the Secretary of State of the state of Indiana, that it is engaged as a common carrier in the transportation of passengers and property by electric railroad between Chicago, Illinois, and South Bend, Indiana, and intermediate points, and that its principal place of business is Michigan City, Indiana.

Prior to plaintiffs' acquisition of their stock, directors of South Shore adopted a by-law known as section 1 of article IV as hereinbefore set forth [9]. There is no provision in the general corporation act requiring a majority of directors to be residents of Indiana.

The complaint alleges that the Kissel Organization was employed by plaintiff Rubin to solicit proxies for the annual meeting held on March 26, 1953, and thereby it "obtained information in trust and in confidence and is now in the employ of the defendant railroad, whose

---

3. 11 U.S.C.A. § 205.

4. 45 U.S.C.A. § 151.

5. 45 U.S.C.A. § 228a.

6. 45 U.S.C.A. § 261(a).

7. 45 U.S.C.A. § 151 et seq.

8. Chicago S. S. & S. B. R. R. v. Fleming, 7 Cir., 109 F.2d 419.

9. The motion to dismiss states that this by-law was adopted in 1930. Appellee's brief states this by-law "has stood unassailed for more than 24 years." Plaintiffs have not questioned these statements at any time in this court.

interests are adverse to that of plaintiffs" and further that said firm "is using said information that was received in trust and in confidence to obtain proxies in favor of management and against that of plaintiff Rubin."

According to plaintiffs there are two contested issues:

a. "Is defendant railroad a common carrier engaged in interstate commerce, or an interurban or street car line? If defendant railroad is a common carrier engaged in interstate commerce, then the restrictive by-law limiting a majority of the corporation's directors to residents of the state of Indiana is void and of no force and effect."

b. "Is defendant railroad authorized to hire a proxy-soliciting firm which had heretofore been retained and engaged in proxy solicitation for one of the plaintiffs and during the course of said employment with plaintiff obtained certain confidential and privileged information which is being used against the plaintiffs?"

However, defendant insists that the only contested issue is whether South Shore's by-law requiring a majority of its directors to be residents of Indiana is valid.

Inasmuch as it appears that the annual meeting originally set for March 25, 1954, was continued to March 29, 1954, and that the meeting was held and its business transacted, it may be that this entire case became moot. However we shall resolve any doubt against that conclusion and proceed to a determination of certain aspects of the merits.

1. Section 2 of the Indiana General Corporation Act [10] provides:

"Corporations may be organized for pecuniary profit under this act for any lawful business purpose or purposes, except rural loan and savings associations, credit unions or corporations for the conduct of a banking, railroad, insurance, surety, trust, safe deposit, mortgage guaranty or building and loan business."

Section 7 of the same act [11] provides in part:

"The power to make, alter, amend or repeal the by-laws of a corporation shall be vested in the board of directors, unless otherwise provided in the articles of incorporation. * * *"

Section 9 of said act [12] provides in part:

"The business of every corporation shall be managed by a board of directors, at least a majority of whom are citizens of the United States. Directors need not be shareholders in the corporation unless the articles of incorporation or by-laws so require, but shall have other qualifications as the by-laws prescribe. * * *"

Section 73 of said act [13] repealed certain sections of the street railroad companies act of June 4, 1861.

Article 2(b) of South Shore's articles of incorporation, as amended in 1944, provides in part, as follows:

"To maintain and operate, and to that end to construct, purchase, lease or otherwise acquire, own and control street railroad, interurban street railroad and suburban street railroad lines and systems, * * *."

Section 1 of Article IV of South Shore's by-laws provides:

"A majority of the directors shall be residents of the State of Indiana."

The source of South Shore's corporate powers is the state of Indiana, by virtue of whose act for the incorporation of street railroad companies it was originally organized and by virtue of whose general corporation act it has existed since September 18, 1929. From that source South Shore's board of directors derived general power to make by-laws

10. Burns' Indiana Statutes, § 25–201.

11. Ibid., § 25–206.

12. Ibid., § 25–208.

13. Ibid., § 25–404.

and specific power to make by-laws prescribing qualifications for directors, which are in addition to the statutory qualification that at least a majority of the board of directors are to be citizens of the United States.

Moreover, it is apparent that its adoption was not because of any ulterior or improper motive aimed at plaintiffs. It was adopted in 1930 and obviously is authorized by the Indiana Public Service Commission Act. That act provides that the term "public utility" as therein used means and embraces every corporation owning, operating, managing or controlling any street railway or interurban railway[14], and requires that a majority in number of the board of directors thereof shall be bona fide residents and citizens of the state of Indiana[15].

 Under these statutory provisions South Shore's by-law now under attack is valid. If, in the conduct of its business, it is exceeding or deviating from its charter powers, that is a matter for the state itself to assert in a direct proceeding brought for that purpose.

 It is immaterial in the litigation before us that the agencies of governments other than the state of Indiana may have determined for their own legislative or administrative purposes that South Shore is a railroad engaged in interstate commerce. South Shore's corporate structure, including such matters as the qualifications required of its directors, is a matter controlled entirely by Indiana law.

 Plaintiffs argue that South Shore, when it accepted all of the terms and conditions of the Indiana general corporation act in 1929, dropped its status as a "street railway company" which it had acquired when it was originally incorporated in 1925 under the act of June 4, 1861, and became a common carrier engaged in the transportation of freight and passengers in interstate commerce. We assume that by this argument plaintiffs mean that South Shore's status thereby was changed from a street railway company to a railroad. Without that construction the argument is meaningless. However, if it is meant that South Shore became a railroad, that conclusion is erroneous for at least one reason, which is that section 2 of the Indiana general corporation act does not permit railroads, as distinguished from street or interurban railways, to be organized thereunder. Railroads are specifically excepted from that act.[16] Therefore, it is clear that South Shore could adopt and continue to exist under that act only as a street or interurban railway. South Shore's status is the same under the general corporation act as it was when that corporation was created under the Indiana law for the formation of street and interurban railways.[17] The validity of the by-law in question is not affected by the fact that South Shore, as a common carrier, engages in interstate commerce in the conduct of its street railway or interurban railway business.

 2. Whether or not South Shore should have been restrained by the District Court from using at its annual meeting the proxies secured by the Kissel Organization, is a moot question, the meeting having been held and adjourned.

 As to the prayer of the complaint that South Shore be enjoined from paying Kissel Organization for its work in securing the proxies pursuant to an agreement with South Shore, no reason has been assigned by plaintiffs indicating that the agreement is unenforceable for any reason. Whether the proxies were obtained by Kissel Organization by means of an improper use of confidential information, which might make it liable to plaintiffs, is irrelevant because plaintiffs pray for no relief against Kissel Organization. On the record before us

14. Burns' Indiana Statutes, § 54–105.

15. Ibid., § 54–212.

16. Burns' Indiana Statutes, § 25–201.

17. Burns' Indiana Statutes, 1926, ed., § 13297 et seq.

no reason appears that indicates it is not entitled to enforce its contract against South Shore for services rendered. Hence it would be improper to enjoin South Shore from performing its obligation under that contract.

For the reasons hereinbefore set forth, the order of the District Court dismissing the action with prejudice is

Affirmed.